UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
LAURO REZENDE                                                          :
                                                                       :
                            Plaintiff,                                 :
                                                                       :
            -against-                                                  :
                                                                       :
CITIGROUP GLOBAL MARKETS, INC.                                         :     09 Civ. 9392 (HB)
                                                                       :
                                                                       :
                            Defendant.                                 :
-----------------------------------------------------------------------x     OPINION &
CITIGROUP GLOBAL MARKETS, INC.                                         :     ORDER
                                                                       :
                            Counterclaimant,                           :
                                                                       :
            -against-                                                  :
                                                                       :
LAURO REZENDE, COMPANHIA                                               :
SIDERURGICA NACIONAL and INTERNATIONAL                                 :
INVESTMENT FUND LTD.                                                   :
                                                                       :
                                                                       :
                            Counterdefendants.                         :
-----------------------------------------------------------------------x

      Plaintiff Lauro Rezende ("Plaintiff" or "Rezende") commenced this action on November 12, 2009, when he filed a complaint against Citigroup Global Markets, Inc. ("Citigroup"), alleging that CGMI improperly blocked his access to brokerage accounts that he controlled. In his complaint, Rezende alleged causes of action for conversion and violation of his rights of privacy; he also requested equitable relief in the form of a declaratory judgment. On December 29, 2009, CGMI filed its answer to Rezende's complaint, and, asserting its status as a neutral stakeholder of the accounts, interplead Rezende, Companhia Siderurgica Nacional ("CSN"), a Brazilian mining company, and International Investment Fund ("IIF"), a Belize company, any of whom Citigroup believed may be the rightful owner of the holdings in the accounts that were frozen. On February 5, 2010, CSN and IIF jointly answered Citigroup's counterclaim for interpleader, and at the same time, brought cross-claims against Rezende; the latter were

1

amended on April 27, 2010. In the cross-claims, CSN and IIF asserted causes of action against Rezende for conversion, fraud, and tortious interference with contract, and also requested equitable relief in the form of declaratory judgment against Rezende and a constructive trust in their favor.

On September 30, 2010, Citigroup submitted its fully-briefed motion seeking discharge as the interpleader stakeholder, and seeking summary judgment on the claims that Rezende alleged in the Complaint. For the reasons that follow, Citigroup's motion is hereby granted.

## I. BACKGROUND

*A. The Citigroup Accounts*

Rezende is a citizen of Brazil, where he resides. Rezende was an employee of CSN from late 1996 through June 2002, and from June 2002 to June 23, 2005, during which time he was CSN's Chief Financial Officer. In the 1990s, CSN acquired a block of shares of M.R.S. Logistica S.A. ("MRS"), a Brazilian railroad company, and in 1999, decided to create a subsidiary to hold some of those shares, so that it could continue to acquire shares of MRS without running afoul of potential share ownership restrictions imposed by the Brazilian National Transportation Agency. Amended Crossclaims at ¶ 15. In order to effect the transfer, CSN's general counsel, Claudio de Azeredo Santos ("Santos") instructed the company's outside counsel in Brazil to form a company in Belize, who, in turn, contacted a Panamanian law firm licensed to act as a registered agent and incorporate international businesses in Belize. The Panamanian firm incorporated IIF as a Belize company on November 29, 1999, and the certificate of incorporation, two bearer share certificates, and other founding documents were sent to CSN.

Between December 3, 1999 and September 24, 2000, the newly-formed IIF bought 10,253,703 shares of MRS from CSN. The parties agree that the purpose of the transfer was to allow CSN to continue to acquire shares of MRS. CSN was party to a shareholder agreement that required it to purchase additional MRS shares from when offered by its shareholders, but by 1999, it was nearing the cap on the amount of MRS shares that it could legally own. The parties agree that Rezende paid $200,000 from his

own funds toward's IIF's purchase of MRS shares and CSN financed the balance of IIF's purchase. IIF then repaid CSN for the purchase loans with funds originating from Rezende's compensation. On this basis, Rezende claims to be the owner of IIF.

On May 11, 2005, MRS announced that it would start paying dividends. On May 16, 2005, Rezende opened a bank account in the name of IIF (the "IIF Account") at Citigroup in New York, signed the account opening documents, and designated himself the sole authorized signatory. He provided IIF's legal address in Belize, but gave a New York mailing address for correspondence related to the account. From 2005 to 2008, MRS transferred dividends totaling in excess of $14 million[1] to the IIF Account upon written instructions given by Rezende. IIF and CSN claim to have had no knowledge of these deposits or of the IIF account that Rezende opened at Citigroup, and believed that MRS held and would continue to hold any dividends for IIF's benefit. Manning Aff. Ex. BB 3 at ¶ 5 ("Lazcano Aff."). On September 11, 2006, Rezende transferred $3,300,000 from the IIF Account to another Citigroup account that he had established in the name of Rubi Company Ltd. (the "Rubi Account"). On March 6, 2007, Rezende transferred $1,700,000 from the IIF Account to a third account at Citigroup that he had established, this time in the name of Hago Overseas Inc. (the "Hago Account") (the three accounts discussed in this paragraph are hereinafter referred to collectively as "the Accounts").

In early June 2008, CSN contemplated a transaction that would have involved the transfer of the MRS shares held by IIF. Accordingly, Lazcano, believing that MRS held the dividends for IIF's benefit, contacted MRS about the balance of the dividend payments owed to IIF. MRS informed Lazcano that it had been instructed to pay the dividends into an account at Smith Barney (then a division of Citigroup) and had done so over the course of three years. MRS provided Lazcano with copies of the written transfer instructions signed by Rezende. Lazcano immediately contacted Citigroup and asked it to block the account and to track the movement of funds through the account. He also notified MRS that IIF had not authorized the payment instructions, and asked MRS not to

---

[1] The next month, in preparation for receiving dividend payments from MRS, CSN's Chief Financial Officer, Otavio de Garcia Lazcano ("Lazcano"), reviewed the company's IIF file and noticed that the original IIF bearer share certificates were missing. Lazcano asked Rezende about the missing shares; Rezende replied that he did not know where they were. (Lazcano Aff. at 7-8). Lazcano then arranged for cancellation of the lost shares and issuance and delivery of new ones.

3

make any further dividend payments to the IIF Account, and to contact Citigroup to request that it freeze the IIF account.

On June 11, 2008, MRS asked Citigroup to freeze the IIF Account and the Hago Accounts. MRS said, "The reason for this request is because we believe the funds in the accounts have been obtained fraudulently," noting that a significant portion of the funds in the accounts were dividends paid on shares of MRS stock that had gone missing in 2005 and were replaced by newly issued shares. Schwed Aff., Ex. K. Also on June 11, 2008, the directors of IIF faxed a letter to Citigroup requesting that it block all transfers from the IIF account. Schwed Aff., Ex. L. At about the same time, Citigroup received a faxed letter from Rezende claiming to be the legitimate owner of IIF and to possess all original documentation and proof of his ownership. Schwed Aff., Ex. M. Rezende demanded that Citigroup transfer all the funds out of the IIF Account to an account at the Safra National Bank. *Id.* Faced with these competing demands to ownership, Citigroup froze all three Accounts.

### B. Other Litigation

On June 16, 2008, IIF commenced in action again st Rezende in New York State Supreme Court, seeking attachment of the Accounts. Rezende immediately agreed to a stipulation restraining the Citigroup accounts pending the outcome of IIF's motion for an attachment, pursuant to which the Supreme Court entered an injunction barring transfer of the funds in the Accounts. By order dated June 9, 2009, the state court granted Rezende's motion to dismiss on grounds of *forum non conveniens* and directed that its injunction would remain in effect for 10 days from the date of the order.

On June 11, 2009, while the state court injunction was still in effect, IIF and CSN commenced an action against Rezende in the Supreme Court of Belize, seeking a declaration of their exclusive rights to all funds in and passing through the IIF Account, and declaring Rezende's lack of right to any such funds. Schwed. Aff., Ex. O. The Supreme Court of Belize immediately issued an order (the "Belize Injunction") enjoining and restraining Rezende and Citigroup from transferring, pledging, or otherwise disposing of the Funds in the Accounts. A copy of that order was mailed to Citigroup in New York. *Id.* On October 28, 2010, counsel for Rezende informed me that the Belize

court had dissolved the injunction, concluding that it had no jurisdiction over an *in personam* action against Rezende. *See* Patterson Letter of October 28, 2010.

*C. The Instant Action*

On November 4, 2009, Rezende sent another letter to Citigroup to request that it release the funds in the Accounts. Schwed Aff., Ex. R. After Citigroup refused, Rezende served Citigroup with the Complaint in this action on November 17, 2009, claiming total and exclusive rights to own and control the funds. In the Complaint, Rezende sought a declaratory judgment declaring that the Belize Court has no jurisdiction over the accounts and that Citigroup's restraint of the funds in the Accounts was unlawful, and also asserted causes of action for conversion and violation of privacy. Citigroup filed its Answer on December 29, 2009, and at the same time, filed its Counter-Claim in Interpleader against Rezende, CSN, and IIF. IIF and CSN filed their Answer to the Interpleader on December 29, 2009, along with cross-claims against Rezende. Rezende immediately moved to dismiss the cross-claims and sought summary judgment dismissing the interpleader on the grounds that Citigroup had unclean hands and was guilty of laches. I dismissed Rezende's motion for summary judgment and on July 1, 2010, ordered Citigroup to deposit the contested funds with the Clerk of Court. Citigroup deposited $12,652,550.34 funds on July 21, 2010, and deposited an additional $3,325,884.13 on September 8, 2010. On or about November 10, 2010, the Clerk of Court prepared a Third Supplemental Order for Deposit in an Interest-Bearing Account, in response to Citigroup's request to deposit an additional $1,775.01 in contested funds.

## II. INTERPLEADER

Citigroup has moved to be discharged from the interpleader action, since it has no claim to or interest in the property. When a court decides that an interpleader action is appropriate, it may discharge a disinterested stakeholder from further liability. 28 U.S.C. § 2361; *see* Wright, Miller & Kane, 7 Fed. Prac. & Proc. Civ. § 1714 (3d ed.). Courts will not discharge an interpleader stakeholder who is not disinterested—that is, where the stakeholder has some claim to the property at issue in the interpleader. *See Citigroup*

5

*Global Markets, Inc. v. KLCC Investments, LLC*, No. 06 Civ. 5466, 2008 WL 102128 (S.D.N.Y. 2007).

Citigroup is not an interested stakeholder, because it claims no interest in the property that is the subject of the interpleader.  Indeed, Rezende does not object to Citigroup's discharge as the interpleader stakeholder.  Therefore, upon Citigroup's deposit of the additional, $1,775.01 in additional funds with the Clerk of Court, it shall be be dismissed as an interpleader stakeholder pursuant to Fed. R. Civ. P. 22.

### III.  SUMMARY JUDGMENT

In addition to its request to be discharged as the interpleader stakeholder, Citigroup moves for summary judgment dismissing the three claims asserted against it by Rezende:  conversion, breach of the right of privacy, and for a declaratory judgment.

#### A.  Legal Standard

Summary judgment is warranted if the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See Cordiano v. Metacon Gun Club, Inc.*  575 F.3d 199, 204 (2d Cir. 2009); *see also* Fed. R. Civ. P. 56(c).  A material fact is one that will affect the outcome of the suit, and a dispute about a material fact occurs where there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmoving party.  *See, e.g., Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Evidence must be viewed in a light most favorable to the non-moving party, and all inferences must be drawn in their favor.  *See Cordiano*, 575 F.3d at 204.  A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial."  *Sista*, 445 F.3d at 169; Fed. R. Civ. P. 56(e).  Where the non-moving party bears the burden of persuasion at trial, the moving party may satisfy its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

### B. Discussion

*Conversion*

Rezende alleges that Citigroup converted the Accounts, and seeks return of the deposited funds. Cmplt. ¶¶ 23-28. Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mutual Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006). Here, Rezende's claim for conversion must fail, because the funds were never in Citigroup's unauthorized possession, which the tort requires. Rezende appears to argue that whether or not Citigroup's possession was unauthorized, its continued refusal to turn over the funds to Rezende constitutes conversion. But under New York law, "where one is rightfully in possession of property, one's continued custody of the property and refusal to deliver it on demand of the owner until the owner proves his right to it does not constitute a conversion." *Trans-World Trading, Ltd. v. North Shore Univ. Hosp. at Plainview*, 882 N.Y.S.2d 685 (2d Dep't 2009).

Here, Citigroup rightfully possessed the funds in the first instance, because they were deposited in accounts at that bank. Citigroup did not retain the funds for its own benefit, nor did it do so in order to deprive Rezende of the funds. Rather, Citigroup was notified by multiple parties of competing claims to the funds, and concluded in accordance with the Federal Rules of Civil Procedure to file a counterclaim in interpleader. *See* Fed. R. Civ. P. 22(a). Indeed, Citigroup deposited the funds with the Court immediately following my Order of July 1, 2010, and when additional funds came into the frozen accounts, immediately contacted the Court to arrange for the deposit of additional funds. When Citigroup answered the Complaint and filed its counterclaim in interpleader, it expressly disclaimed any stake in the funds and does not now claim any right to the funds.[2] There is no set of facts upon which I could find that Citigroup had converted the funds, and Rezende's claim for conversion must therefore fail.

---

[2] Of course, Rezende's claim to ownership of the funds in the accounts is not extinguished by dismissal of his claim against Citigroup for conversion, because proper ownership of the funds must be determined as between the interpleader defendants, Rezende, CSN, and IIF.

7

*Violation of Privacy*

In his third claim against Citigroup, Rezende alleges that Citigroup violated his rights of privacy by providing information about the Accounts to purported representatives of IIF for their counsel, which was unlawful and in breach of Citigroup's own policies. Cmplt. ¶¶ 33-35. Although Citigroup asserts a plethora of reasons why this claim must fail, the fatal blow comes from the fact that there is simply no common law right of privacy under New York law. *See Grossinger v. Canetti & Troodler LLP*, 06 Civ. 4437, 2009 WL 2337348 at *3 (S.D.N.Y. Jul. 27, 2009); *Messenger ex rel. Messenger v. Gruner & Jahr Printing & Pub.*, 94 N.Y.2d 436 (2000). Whether or not the parties agree on the factual background surrounding Citigroup's disclosures of the Account names and numbers to MRS, there is no legal basis upon which Rezende could recover under the theory that his privacy was breached.

Rezende also argues that he seeks to recover against Citigroup for violation of SEC Regulation S-P, 15 U.S.C. § 6801 *et seq.* Cmplt. ¶ 34. Regulation S-P, also known as the "Safeguard Rule," requires investment companies to adopt policies and procedures to protect a customer's privacy. The SEC enacted Regulation S-P pursuant to the Graham Leach Bliley Act ("GLBA"). As courts in this district and elsewhere have recognized, the GLBA does not provide for a private right of action. *See Menton v. Experian Corp.*, No. 02 Civ. 4687, 2003 WL 21592820 (S.D.N.Y. Jul. 21, 2003); *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) (collecting cases). There is no basis upon which Rezende could recover for a violation of the privacy standards promulgated by the SEC pursuant to Regulation S-P; therefore, this claim, too, must be dismissed.

*Declaratory Judgment*

Rezende also seeks declaratory judgment to the effect that (i) the Belize court has no jurisdiction over the Accounts and cannot restrain them; and (ii) Citigroup's refusal to release the Accounts is unlawful and Citigroup has violated Rezende's right to privacy in the Accounts. Cmplt. ¶¶ 23-28. As to the first prong, Rezende's request for such declaratory relief has been rendered moot by the recent decision of the Belize court,

dismissing the action against Rezende for lack of personal jurisdiction. "Mootness, in the constitutional sense, occurs when the parties have no legally cognizable interest or practical personal stake in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 483 F.3d 85, 94 (2d Cir. 2007) (internal quotations omitted). Since the Belize injunction restraining the Accounts has been dissolved, there is no basis for Rezende to seek declaratory relief with respect thereto. Also moot, on the basis of my decision today, is Rezende's request for a declaratory judgment to say that Citigroup has violated Rezende's right to privacy in the accounts.

### III. Conclusion

For the foregoing reasons, Citigroup's motion for summary judgment is hereby GRANTED. Citigroup's motion to be discharged as stakeholder shall be granted upon Citigroup's deposit of the additional $1,775.01 in contested funds. The Clerk of Court is instructed to close this motion (Docket No. 65).

**SO ORDERED.**

New York, New York
November 17, 2010

_____
U.S.D.J.

9