**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

LAURO REZENDE                                          :
                                                       :
                    Plaintiff,                         :
                                                       :
            -against-                                  :
                                                       :
CITIGROUP GLOBAL MARKETS, INC.                         :        09 Civ. 9392 (HB)
                                                       :
                                                       :
                    Defendant.                         :
-------------------------------------------------------------------x        OPINION &
CITIGROUP GLOBAL MARKETS, INC.                         :        ORDER
                                                       :
                    Counterclaimant,                   :
                                                       :
            -against-                                  :
                                                       :
LAURO REZENDE, COMPANHIA                               :
SIDERURGICA NACIONAL and INTERNATIONAL                 :
INVESTMENT FUND LTD.                                   :
                                                       :
                                                       :
                    Counterdefendants.                 :
-------------------------------------------------------------------x

    Plaintiff Lauro Rezende ("Rezende") commenced this action on November 12,

2009, when he filed a complaint against Citigroup Global Markets, Inc. ("Citigroup"),

alleging that Citigroup improperly blocked his access to brokerage accounts that he

controlled.  In his complaint, Rezende alleged causes of action for conversion and

violation of his rights of privacy; he also requested equitable relief in the form of a

declaratory judgment.  On December 29, 2009, Citigroup filed its answer to Rezende's

complaint, and, asserting its status as a neutral stakeholder of the accounts, interpleaded

Rezende, Companhia Siderurgica Nacional ("CSN"), a Brazilian mining company, and

International Investment Fund ("IIF"), a Belize company, any of which Citigroup

believed may be the rightful owner of the holdings in the accounts.  On February 5, 2010,

CSN and IIF jointly answered Citigroup's counterclaim for interpleader.  Rezende sought

summary judgment dismissing the interpleader on the grounds that Citigroup had unclean

1

hands and was guilty of laches.  I dismissed Rezende's motion for summary judgment and on July 1, 2010, ordered Citigroup to deposit the contested funds with the Clerk of Court.

In their answer to the counterclaim, CSN and IIF crossclaimed against Rezende, and asserted causes of action against Rezende for (i) a declaratory judgment (first cause of action); (2) conversion of the IIF shares, MRS dividends, and $2.2 million from an account at ABN AMRO (second, third, and sixth causes of action); (iii) fraud with respect to the MRS dividends and the $2.2 million transfer (fourth and seventh causes of action); (iv) tortious interference with contractual relations with dealings with MRS and ABN AMRO (fifth and eighth causes of action); and (v) seeking a constructive trust over the Accounts (ninth cause of action).  Rezende moved to dismiss the cross-claims on June 14, 2010.  I reserved decision on the cross-claims in keeping with the Second Circuit's theory that a district court must first resolve which claimant is entitled to interpleaded funds, before it turns to a claimant's cross- or counter-claims in tort.  *See Royal School Labs v. Town of Watertown*, 358 F.2d 813, 817 (2d Cir. 1966); *see also Citigroup Global Markets Inc. v. KLCC Investments, LLC*, 2007 WL 102128 (S.D.N.Y. 2007) (Sand, J.).  I have now released Citigroup as the interpleader stakeholder, and consequently, I will now resolve whether any of the cross-claims against Rezende may be dismissed before trial.  In my November 17, 2010 Opinion & Order, I detailed the facts of this case, which might strain credulity even if they appeared in the pages of a novel.

## I.   DISCUSSION

### A.  *Forum Non Conveniens*

Without reaching the potential merits of the cross-claims, Rezende argues that they must all be dismissed on grounds of forum *non conveniens*, because Brazil is the proper forum for these claims.  Courts in the Second Circuit consider the following factors in determining the proper forum: (1) the deference given to the plaintiff's choice of forum; (2) the adequacy of the proposed alternative forum; and (3) what, if any, public or private interest favor adjudication in a particular forum.  *Norex Petroleum v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).  Here, Rezende chose to commence this action in New

2

York when he filed his Complaint against Citigroup, which suggests that it would not be truly inconvenient or burdensome for him to litigate here. Although this court has no reason to believe that the courts of Brazil would be an inadequate forum for litigation of the crossclaims, for a court to dismiss on grounds of *forum non conveniens*, it must find that the "chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006). Finally, in considering the balance of public and private factors, it is clear at this point in the litigation that the location of witnesses and documents in other countries has not proven to be an impediment to effective discovery, which was one of Rezende's key concerns. In addition, the cross-claims are intimately related to the resolution of claims to funds deposited with this Court pursuant to Citigroup's interpleader, a factor that strongly favors keeping the crossclaims here. Thus, litigation of the crossclaims in this forum is proper and I will not dismiss on grounds of *forum non conveniens*.

### B.  Legal Standard on a Motion to Dismiss

A complaint must be dismissed pursuant Rule 12(b)(6) if plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6). To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it must determine whether they "plausibly give rise to an entitlement to relief." Id. at 1950. A court must accept as true all of the factual allegations in the plaintiff's complaint. *Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2d Cir. 2009).

### C.  Claims Relating to the $2.2 Million Transfer from ABN AMRO are Properly Asserted, but Must be Dismissed on Other Grounds

CSN and IIF's sixth, seventh, and eighth causes of action (for conversion, fraud, and tortuous interference, respectively) relate to an alleged improper transfer by Rezende of

$2.2 million from IIF's bank account at ABN AMRO.  Am. Cross-Claims ¶¶ 73-90.
Rezende argues that these claims must be dismissed for lack of jurisdiction, because they
arise out of a separate transaction or occurrence than do the claims in Rezende's original
complaint, and thus fail to meet the requirements of Federal Rule of Civil Procedure
13(g) for crossclaims against a co-party.

Pursuant to Rule 13(g), "a pleading may state as a crossclaim any claim by one party
against a coparty if the claim arises out of the transaction or occurrence that is the subject
matter of the original action or of a counterclaim, or if the claim relates to any property
that is the subject matter of the original action."  Fed. R. Civ. P. 13(g).  There is no
dispute that the alleged improper transfer out of the ABN AMRO account occurred in
2001, long before Rezende opened any of the accounts that led to the disputes that form
the basis for his Complaint against Citigroup.  Since these claims clearly arise out of a
separate transaction or occurrence from the claims asserted in the original action,
ordinarily they would not be joined here.  However, "under Rule 18(a)…a party asserting
a proper cross-claim within Rule 13(g) may join with it as many independent, unrelated
cross-claims as he has against an opposing party."  *First Nat'l Bank of Cincinnati v.
Pepper*, 454 F.2d 626, 635 (2d Cir. 1972); *see also TIG Ins. Co. v. Century Indem. Co.*,
No. 08 Civ. 7322, 2009 WL 959653 at * 3 (S.D.N.Y. Apr. 8, 2009).  As the balance of
this opinion shows, CSN and IIF have properly asserted a number of crossclaims against
Rezende that meet the transaction-or-occurrence requirement of Rule 13(g); thus CSN
and IIF's unrelated claims may piggyback here pursuant to Rule 18(a).  Nonetheless, as
discussed below, the crossclaim for fraud in connection with the $2.2 million must be
dismissed for failure to state a claim.

### D.   CSN and IIF's Claims for Fraud

Rezende argues that CSN and IIF's crossclaims for fraud must be dismissed for
failure to state a claim, because they fail to allege that Rezende made misrepresentations
to IIF or CSN upon which those parties relied.[1]  Rather, the only alleged

---

[1] Under New York law, the five elements of a fraud claim must be shown by clear and convincing
evidence:  (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge
of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5)

misrepresentations were made to MRS (¶ 63), to Smith Barney (¶ 64) and to ABN AMRO (¶ 65).  Under New York law, "allegations of third-party reliance are insufficient to make out a common law fraud claim."  *New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008).  CSN and IIF do not dispute that their fraud allegations rely on statements to third parties, but contend that New York law does, in fact, recognize a claim for fraud where a defendant makes a fraudulent misrepresentation to a third party who relies on it to the plaintiff's detriment.  *See* Opp. Br. 17.  CSN and IIF rely on *Rice v. Manley*, 66 N.Y. 82 (1876), which is nearly a century and a half old and easily distinguished from contemporary claims for fraud—*Rice* arose in the context of what would today be recognized as a tortious interference with contract claim; it involved a plaintiff who had agreed to buy a quantity of cheese from a third party.  The defendant wanted to buy the cheese himself, and so he sent a fraudulent telegram to the third party that appeared to be from the plaintiff, and the court recognized the plaintiff's fraud claim. 66 N.Y. at 83.  Given that New York common law today recognizes the separate tort of interference with contract, I see no reason to contravene the black-letter law of this Circuit in order to recognize a claim for fraud that depends entirely on statements to third parties.  Indeed, just recently, the Second Circuit reaffirmed its holding that "fraud claims may not be premised on false statements on which a third party relied."  *Federal Treasury Enterprise Sojuzplodoimport v. Spirits Int'l, N.V.*, Slip Copy, 2010 WL 3933560 (2d Cir. October 8, 2010) at *1.  Consequently, CSN and IIF's fourth and seventh crossclaims, for fraud with respect to the MRS dividends and with respect to the $2.2 million, must be dismissed.

### E.   CSN and IIF's Claims for Conversion

CSN and IIF allege that Rezende converted their property by (1) permanently removing the bearer share certificates from the file in CSN's corporate offices; (2) directing MRS to pay dividends owed to IIF into his personal bank account; and (3) directing the ABN AMRO bank to transfer $2.2 million dollars from IIF's account into

---

resulting damage to the plaintiff." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).

another Rezende bank account.  *See* Am. Crossclaims ¶¶ 49, 57, 76.  Rezende moves to dismiss for failure to state a claim.

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 300 (2d Cir. 2006) (citing *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)).  Rezende contends that CSN and IIF's sixth cause of action, for conversion with respect to the $2.2 million in the ABN AMRO account, must fail, because the pleading has not adequately identified the property that was allegedly converted.  "Where the property is money, it must be specifically identifiable…the funds of a specific, named bank account are sufficiently identifiable." *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (App. Div. 1995). Here, CSN and IIF allege that the ABN AMRO account was held in IIF's name (¶ 23) and repeatedly provide the ABN AMRO account number in their pleadings (¶¶ 23, 74, 81, 87).[2]  Thus, the sixth crossclaim, for conversion of the $2.2 million, will not be dismissed for failure to state a claim.

With respect to the second and third causes of action, for conversion of the IIF shares and the MRS dividends, Rezende argues that CSN and IIF never demanded the return of the subject property.  "New York law does not, however, always require that a demand be made and be met by a refusal to make out a claim of conversion.  Instead, a demand is only necessary where the property is held lawfully by the defendant." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital*, 87 F.3d 44, 49 (2d Cir. 1996).  The rule requiring a demand is applicable where an innocent person has purchased stolen property, their liability attaches only after a refusal following the true owner's demand for the return of the property.  *See Lawrence v. Meloni*, 558 N.Y.S.2d 360 (App. Div. 1990).  Here, a plaintiff has alleged that the defendant holds the property unlawfully, whether through misappropriation or some other interference, and therefore "no demand and refusal are necessary to render the defendant liable." *Leveraged Leasing*, 87 F.3d at 49-50 (collecting cases).  CSN and IIF allege that Rezende removed the bearer shares from the

---

[2] Rezende argues that this is not enough, and contends that a plaintiff must specify the name of the account *into* which the allegedly converted funds were deposited.  There is no such identification requirement under New York law, *see Payne v. White*, 101 A.D.2d 975, 976, but even if there were, CSN and IIF have clearly stated that the $2.2 million were moved into account no. 6006990, at Safra Bank in New York.

CSN offices without CSN's knowledge (¶ 49), and that he intentionally directed payment of MRS dividends into one of his accounts without any authorization from IIF, the alleged rightful owner of the dividends (¶ 57).  Under these circumstances, the demand requirement does not apply to claims for conversion.  Rezende's motion to dismiss the second and third crossclaims is therefore denied.

### F.   Statutes of Limitations and Equitable Estoppel

Finally, Rezende argues that the crossclaims for conversion, for tortious interference with contractual relations, and for fraud with respect to the $2.2 million in the ABN AMRO account, are all barred by the relevant statutes of limitation.  With respect to claims for conversion, the applicable statute of limitations is three years from the date upon which the alleged conversion took place.  *See* CPLR § 214(3).  The statute of limitations for tortious interference with contract is also three years, which begin to run "when the defendant performs the action (or inaction) that constitutes the alleged interference."  N.Y. C.P.L.R. § 214(4), *Thome v. Alexander & Louisa Calder Foundation*, 890 N.Y.S.2d 16, 30 (1st Dep't 2009).  The statute of limitations for fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).[3]

As a threshold matter, it is clear that the statutes of limitations have run with respect to all the claims that Rezende has identified.  The crossclaims for conversion allege that Rezende removed the bearer shares from CSN's offices in September 2003, and in May 2005, diverted the MRS dividends into personal accounts. The crossclaim for tortious interference with contractual relations with MRS arises out of the same events in 2005 that led to the alleged diversion of MRS dividends into Rezende's personal accounts.  The crossclaim for tortious interference with contractual relations with ABN AMRO Bank arises out of an event that took place on October 4, 2001, when Rezende allegedly ordered a secret transfer of approximately $2.2 million out of IIF's account at ABN AMRO.

---

[3] The seventh crossclaim, for fraud with respect to the $2.2 million, is also subject to dismissal for failure to state a claim, as discussed above.

CSN and IIF argue that the doctrine of equitable estoppel must apply here to toll all statutes of limitations, because Rezende long prevented CSN and IIF from discovering his fraudulent scheme.  Sitting in diversity, I apply New York's doctrine of equitable estoppel, as opposed to the equivalent federal doctrine.  *See Meridien Int'l Bank Ltd. v. The Gov't of the Republic of Liber*, 23 F.Supp.2d 439, 445-46 (S.D.N.Y. 1998).  Under the doctrine of equitable estoppel in New York, a defendant is estopped from pleading a statute of limitations defense if the "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007); *Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (1978).  For the doctrine to apply, a plaintiff may not rely on the same act that forms the basis for the claim; rather, the doctrine is "triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient."  *Louise Wise*, 8 N.Y.3d at 491.  "The question of whether a defendant should be equitably estopped is generally a question of fact," but where it is clear that a plaintiff was aware of a potential claim and failed to act, the doctrine is unavailing.  *See Putter v. North Shore University Hosp.*, 7 N.Y.3d 548, 553 (2006).

Here, CSN and IIF allege that, with respect to the bearer shares, Rezende lied, stating shortly after he took them that he did not know where they were (¶ 32).  Worse yet, since Rezende was at that time a fiduciary of CSN, and as Financial Director of the company was entrusted with major decisions about finance and accounting, the cross-claimants did not suspect wrongdoing on Rezende's part (¶¶ 20-21).  *See Lugosch v. Congel*, 443 F.Supp.2d 254, 274 (N.D.N.Y. 2006) (equitable estoppel more likely to apply where there was a fiduciary relationship between the parties).  With respect to the MRS dividends, CSN and IIF allege that Rezende, while he was still Financial Director, opened secret accounts under the name "International Investment Fund," to give the false impression that the account was related to CSN's subsidiary IIF (¶ 35).  He is also alleged to have made it appear to MRS that the deposits were approved by CSN, in order not to raise any alarms (¶¶ 35-38).  CSN and IIF have adequately alleged facts that show that they were induced by misrepresentations and deception to refrain from filing timely crossclaims.  Thus, the doctrine of equitable estoppels tolls the statutes of limitations with respect to claims relating to the CSN bearer shares and the MRS dividends.

The claims related to the $2.2 million from IIF's account at ABN AMRO Bank may also proceed. CSN and IIF allege that neither "knew of Rezende's theft of approximately $2.2 million out of IIF's account at ABN AMRO Bank in New York, or of the existence of the various accounts through which Rezende moved those funds, until 2008, when CSN received documents in response to a subpoena *duces tecum* served on Safra Bank" (¶ 28). They explain that Rezende resigned from CSN—for the first time—in June 2002, less than a year after he transferred the funds out of the ABN AMRO account and without his theft having been discovered (¶¶ 20, 23, 25). Although CSN and IIF have a hard road to hoe to establish that it was Rezende's deception that prevented them from discovering the missing $2.2 million, all that is required on a motion to dismiss is that they plead—not prove—facts consistent with their contention that they were prevented from discovering the alleged transfer of $2.2 million out of IIF's account at ABN AMRO. *Putter*, 7 N.Y.3d at 553. Given that Rezende was a fiduciary of CSN at the time of the alleged transfer, and after the alleged transfer out of the ABN AMRO account, he is alleged to have continued to move the funds between accounts at different banks, that claim, too, will survive (¶¶ 20, 23, 25, 26-28).

## II.   CONCLUSION

For the foregoing reasons, Rezende's motion to dismiss the fourth and seventh crossclaims is GRANTED. Rezende's motion to dismiss the second, third, fifth, sixth, and eighth crossclaims is DENIED. The motion to dismiss the ninth crossclaim, for a constructive trust, is denied. The first crossclaim, for a declaratory judgment, implicates the contested ownership of the accounts at issue in the interpleader aspect of this litigation, and shall not be dismissed at this stage.

**SO ORDERED.**

New York, New York
November 18, 2010

U.S.D.J.

9