UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LAURO REZENDE,                                         :
                                                       :
                              Plaintiff,               :
                                                       :
              -against-                                :
                                                       :
CITIGROUP GLOBAL MARKETS, INC.,                        :          09 Civ. 9392 (HB)
                                                       :
                                                       :
                              Defendant.               :
------------------------------------------------------------------------x          OPINION AND
CITIGROUP GLOBAL MARKETS, INC.,                        :          ORDER
                                                       :
                      Counterclaimant,                 :
                                                       :
              -against-                                :
                                                       :
LAURO REZENDE, COMPANHIA                               :
SIDERURGICA NACIONAL and INTERNATIONAL                 :
INVESTMENT FUND LTD.,                                  :
                                                       :
                                                       :
                      Counterdefendants.               :
------------------------------------------------------------------------x
Hon. Harold Baer, Jr., U.S.D.J.:

         This action involves a dispute over the rightful owner of certain funds and securities.

Compania Siderurgica Nacional ("CSN") filed a motion for summary judgment on December 17,

2010 and a motion for case dispositive sanctions on January 20, 2011, and Lauro Rezende

("Rezende") filed a motion for sanctions on January 28, 2011.[1]  On March 11, 2011, Magistrate

Judge Freeman issued a Report and Recommendation ("R & R"), in which she recommends (1)

denying CSN's motion for summary judgment; (2) granting CSN's motion for sanctions but for a

lesser sanction than dismissal; and (3) denying Rezende's motion for sanctions.  Both parties

filed objections to the R & R pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil

Procedure 72, to which both parties responded on April 1, 2011.  After considering the parties'

arguments, this Court approves, adopts, and ratifies Magistrate Judge Freeman's R & R with

---

[1] CSN's motions are stated to be brought not only by CSN, but also by counterdefendant International Investment
Fund Ltd. ("IIF"), although the ownership of IIF is at issue in this case.  For ease of reference, the Court will refer to
the parties to the pending motions only as CSN and Rezende.

1

respect to its factual findings and recommendation regarding the summary judgment motion, and adopts in part and rejects in part the R & R with respect to the recommendation regarding the sanctions motion. Several other issues not dealt with in the R & R, including bifurcation and the order of the trial, were briefed by the parties for the convenience of all concerned, and decisions on those issues are included at the foot of this opinion.

## I.  Background

The facts that follow are described more fully in Magistrate Judge Freeman's R & R, which is incorporated herein by reference. CSN is a large, multinational steel company based in Brazil. Rezende was CSN's Financial Director from 1996 until June 2002, and was CSN's Executive Director for Investments from 2003 until June 2005. In the 1990s, CSN acquired a block of shares in M.R.S. Logistica S.A. ("MRS"), a Brazilian railroad company, which was required by law to have at least five owners, none of which could individually own more than 20% of the voting stock. Because of this cap, in order to obtain additional shares of MRS, CSN needed to divest itself of a portion of its MRS stock. IIF, a Belize corporation, was created to receive a portion of CSN's stock in MRS, which would then allow CSN to acquire additional stock in MRS. The parties dispute whether CSN or Rezende created IIF and is its present owner.

### A.  Magistrate Judge Freeman's R & R

In Magistrate Judge Freeman's R&R, she recommends (1) denying CSN's motion for summary judgment; (2) granting CSN's motion for sanctions but for a lesser sanction than dismissal; and (3) denying Rezende's motion for sanctions. Here is a summary of her findings conclusions.

#### 1.  Denying CSN's motion for summary judgment

CSN's claims against Rezende arise from Rezende's alleged theft of $2.2 million from IIF's bank accounts and Rezende's alleged theft of IIF's bearer share certificates. CSN contends that Rezende convinced MRS to place more than $14 million in dividends, due to IIF, into the Rezende IIF Account, of which Rezende transferred $6 million into his personal account. The legality of these occurrences hinge on whether CSN or Rezende is the actual owner of IIF. CSN and Rezende each claim to have formed and to be the present owner of IIF. Magistrate Judge Freeman recommends denying CSN's motion for summary judgment because material issues of fact are posed by both parties.

Rezende also asserts assault and battery claims against CSN for injuries that Rezende allegedly sustained at the hands of CSN's Chairman and CEO during a physical altercation that took place during a deposition.  CSN argues that the Court lacks jurisdiction to hear this claim. Magistrate Judge Freeman recommends denying CSN's motion for summary judgment on Rezende's assault and battery claim, finding that the Court retains jurisdiction under Rules 18(a) and 13(g) of the Federal Rules of Civil Procedure.

      2.  <u>Granting in part of CSN's motion for sanctions</u>

CSN's sanctions motion arises out of a letter that Rezende produced in discovery on October 8, 2010, purportedly written by a Swiss lawyer, Franz Karsten, to numerous Brazilian authorities and suggests that CSN had committed various crimes in Brazil, including bribery of public officials.  CSN requested leave to conduct discovery regarding the letter's authenticity, which resulted in Rezende submitting further documents that CSN contends amount to a fraud on the court; the documents include Franz Karsten's purported affidavit, bank statements, driver's license, utility bill, and evidence of a post office box opened in his name.

Magistrate Judge Freeman found that Rezende made a number of statements and submitted documents that he knew to be false and misleading, but that these were not central to the substantive issues in the case, and recommends that dismissal be denied but that CSN be awarded the full amount of attorney's fees, deposition costs, investigator and other fees, and that the jury be given an instruction that Rezende "deliberately lied under oath at a previous proceeding."

      3.  <u>Denying Rezende's motion for sanctions</u>

Rezende also moves for sanctions based on CSN's purported falsification of a "Subscriber's Resignation Letter."  An expert testified that CSN more likely than not forged a name on the letter.  Magistrate Judge Freeman recommends denying the motion because the expert's opinion does not amount to clear and convincing evidence.

  B.  <u>Objections to the R & R</u>

CSN objects to Magistrate Judge Freeman's recommendation that summary judgment be denied and as well to her recommendation not to impose case dispositive sanctions, and in the alternative, that the recommended jury charge is not adequate.  Rezende objects to the portion of the R & R that recommends granting CSN's sanctions motion, the proposed jury instruction, and

that Rezende be ordered to pay all of CSN's legal and investigative fees in connection with the motion for sanctions.[2]

## II.  **Legal Standard**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1); *New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F.Supp.2d 410, 414 (S.D.N.Y. 2009). This Court reviews de novo those parts of the R & R to which objections are made, and reviews the remainder for clear error. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Perimeter Interiors*, 657 F. Supp. 2d at 414. "When a party makes only generalized or conclusory objections, or simply reiterates his original arguments, the Court reviews a magistrate judge's report and recommendation  for clear error." *Perimeter Interiors*, 657 F. Supp. 2d at 414; *accord Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

## III.  **Discussion**

### A.  Motion for Summary Judgment

With respect to the motion for summary judgment, CSN objects to Magistrate Judge Freeman's conclusion that "there is a triable issue of fact as to which party received the original IIF formation documents" and her recommendation to deny summary judgment on that basis.[3]

A motion for summary judgment must be granted if the moving party shows "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party.  *LaSalle*

---

[2] Pursuant to this Court's March 17, 2011 Order, on April 8, 2011 CSN submitted its Application for Attorneys' Fees and Costs, to which Rezende responded on April 15, 2011.

[3] In issuing this decision, this Court has given no weight to CSN's appendices to its objections that exceed the 10 page limit set by this Court in the March 16, 2011 status conference and reaffirmed in the March 17, 2011 Order, and which in some instances essentially amount to new evidence not submitted with the summary judgment motion papers.  The submission of objections to the R & R is not the time to reargue a motion for summary judgment based on new evidence.  *See, e.g.*, *Pan American World Airways, Inc. v. International Bhd. of Teamsters*, 984 F.2d 36, 20 n.3 (2d Cir. 1990) (rejecting a claim that the district court had impermissibly denied an opportunity to present additional testimony upon review of the magistrate's report); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) (finding no abuse of discretion where a district court refused to consider supplemental evidence submitted with the objection to the magistrate's report).

*Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).  Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Reviewing de novo the evidence submitted in connection with the summary judgment motion, triable facts exist that preclude summary judgment.[4]  The parties dispute whether CSN or Rezende was the original recipient of the bearer share certificates and whether Rezende stole them from CSN's vault.  This dispute is material because CSN argues that under Belizean law, the possession of a bearer share certificate is "*prima facie* evidence of title to the share it represents."  R & R at 25 (internal citation omitted).  The dispute is genuine because, although the weight of the evidence suggests that CSN was the original recipient of the certificates, a reasonable jury could find for Rezende.  CSN has not adequately refuted Rezende's argument that there is no record of CSN's Board of Directors approving the formation of IIF as required by its bylaws.  R & R at 13-14.  Additionally, Rezende's testimony that he was the original recipient of the Subscriber's Resignation Letter is supported by a forensic expert.  Although CSN has expressed doubt regarding the sincerity and expertise of Rezende's expert and provided evidence that purports to contradict Rezende's testimony, these arguments involve issues of credibility and may not be decided on a motion for summary judgment.

B.  Motions for Sanctions

With respect to the motions for sanctions, CSN objects to Magistrate Judge Freeman's recommendation not to impose case dispositive sanctions, and in the alternative, that the recommended jury charge is not adequate.  Rezende objects to the portions of the R & R that recommend granting CSN's sanctions motion and that the jury be instructed that Rezende lied to the Court and that Rezende be ordered to pay all of CSN's legal and investigative fees with respect to the fraud on the court issue.

1.  *Existence of Fraud on the Court*

---

[4] Rezende argues that CSN is not entitled to de novo review because CSN's objections "are essentially a rehash of the arguments that it made to the Magistrate in its original submissions" and that this Court should review the R & R for plain error.  4/1/2011 Responses of Lauro Rezende to CSN's Objections to Magistrate's Report and Recommendation, at 2 (citing *Vega v. Artuz*, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke de novo review of the magistrate's recommendations.")).  I need not address the issue here because under either a de novo or plain error standard, summary judgment is not appropriate here.

"A fraud on the court occurs where it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). "The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" Id. (*quoting McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)).

Upon finding that a party has engaged in misconduct that rises to the level of fraud on the court, the court may impose sanctions, including a jury charge, an attorneys' fee award, and in some cases the dismissal of a party's claims. *See Chambers*, 501 U.S. at 44-45; *Passlogix*, 708 F. Supp. 2d at 394.  Generally, to determine whether to sanction a party with dismissal, the court considers five factors: "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future." *McMunn*, 191 F. Supp. 2d at 446.  Ultimately, however, "dismissal is permissible only when the deception relates to matters in controversy in the action, and even then is so harsh a remedy that it should be imposed only in the most extreme circumstances."  *Sanchez v. Litzenberger* , No. 09 Civ. 7207, 2011 WL 672413, *5 (S.D.N.Y. Feb. 24, 2011) (internal quotation marks and citation omitted).

There is ample evidence that Rezende perpetrated an ongoing fraud on the Court.  After having reviewed the record, I agree with the following findings of Magistrate Judge Freeman:

1. that Rezende produced the Swiss Letter to CSN in discovery, with knowledge that the document was not actually authored, as it appeared, by a legitimate Swiss attorney, with a legitimate Swiss law firm;

2. that the Karsten Affidavit was submitted by Rezende, to the Court, for the purpose of trying to end CSN's inquiry into the authenticity of the Swiss Letter, and with Rezende's knowledge that the affidavit was either fabricated or, at a minimum, intended to mislead the Court as to Karsten's legitimacy;

3. that the Swiss post office box referred to in the Swiss Letter was obtained either by Rezende or with his knowledge, for the purpose of furthering the deception of the Swiss Letter;

4. that Karsten's rented office space in Switzerland, as well as his law firm e-mail address were all set up, either by Rezende himself or with his knowledge, after CSN started investigating the Swiss Letter, and for the purpose of persuading CSN and the Court that Karsten had a legitimate Swiss law practice, which Rezende knew he did not;

5. that the Karsten driver's license was fabricated, that it was modeled on Rezende's own license, and that, while Rezende did not submit the fake Karsten driver's license to the Court, he provided it to his then-counsel, with knowledge of its falsity, for the purpose of submitting it to the Court;

6. that, in these proceedings, Rezende has made numerous statements under oath or under penalty of perjury that were knowingly false when made, including at least the following:

   - "The circumstantial evidence of my alleged involvement in securing an address, phone number, and email address for Karsten is a mystery to me. It is possible that Karsten used my identity. It is possible that CSN or someone under its control fabricated the alleged evidence. I, however, had nothing to do with any of this alleged improper conduct." (Rezende 1/28/11 Decl., ¶ 16.)

   - "I did not have any role in the opening of the Swiss box, no." (Hrg. Tr. at 102)

   - "I had nothing to do with any alleged falsification of the Karsten affidavit." (Rezende 1/28/11 Decl., ¶ 46.)

   - "CSN's motion papers . . . claim that Karsten's driver's license is not real. I have no explanation for this. If anyone fabricated the driver's license, it was Karsten and not me. I never saw his driver's license before it recently surfaced in this case." (Rezende 1/28/11 Decl., ¶ 50.)

R & R at 61-62.  Regardless of whether Rezende invented Karsten out of whole cloth or collaborated with some individual who pretended to be a Swiss lawyer, Rezende persisted in what he could not have believed in good faith to be truthful and did so before a Magistrate Judge of this Court even after countervailing evidence became available. The ongoing submission of documents and offering of testimony arising out of such deceit constitutes fraud on the court because it seriously affects the integrity of the judicial process.  *See Passlogix*, 708 F. Supp. 2d at 393-94.  Furthermore, Rezende has produced virtually no credible evidence corroborating his testimony, and Magistrate Judge Freeman, who observed Rezende testify at the hearing in this matter, found him less than credible.

Rezende argues that the facts that Magistrate Judge Freeman relied on to support her conclusion that Rezende defrauded the court do not amount to clear and convincing evidence.

These arguments are unpersuasive and in some cases incredible.  Rezende argues that there is nothing wrong about producing a letter with knowledge that its signature is fraudulent "given CSN's prior intimidation tactics" and because "this Court was not defrauded by that letter in any way since the letter was not given to this Court until CSN made an issue out of it."  3/28/2011 Objections of Lauro Rezende to Magistrate's Report and Recommendation, at 4.  Rezende's unsubstantiated comment that CSN intimidated Rezende in the past is hardly an excuse for perpetrating a fraud on the court.  Furthermore, that CSN raised the issue does not undermine the significance that Rezende knowingly presented false evidence to a court, to say nothing of drawing his first lawyer into an unknowing participation in his fraud.

Rezende also argues that there is no proof that he knew the Karsten Affidavit was fabricated at the time it was submitted to the Court.  Rezende's fraudulent conduct, however, was evidenced by his actions subsequent to the affidavit, including opening the post office box, renting office space, setting up an email account and fabricating a driver's license.  After considering Rezende's other arguments on this issue, I find them equally unpersuasive.

### 2.  Appropriate Sanctions

This Circuit has expressed on numerous occasions its preference that cases be resolved on the merits.  *See Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (collecting cases).  Despite the existence of the evidence demonstrating that Rezende perpetuated an ongoing fraud on the court, case dispositive sanctions are not appropriate because the fraud was not central to the substantive issues in the case.  *See Rybner v. Cannon Design, Inc.*, 1996 WL 470668 (S.D.N.Y. Aug. 20, 1996), at *6 (holding that case dispositive sanctions were not appropriate where the truthfulness of a party's deceit is not central to the claim nor involved "prolonged or repeated obstructionist conduct in perpetuating [a] lie").  Case dispositive sanctions may be appropriate if Rezende's ongoing fraud related to a matter more central to the dispute.   The appropriate sanction is that CSN shall be awarded the full amount of reasonable attorneys' fees, deposition costs, investigator fees, and any other fees and expenses it incurred (a) in investigating the provenance of the Swiss Letter and the existence/legitimacy of Karsten, and (b) in making its sanctions motion, including preparing for and participating in the Court's evidentiary hearing.

In determining whether an attorneys' fees request is reasonable, courts begin with a "presumptively reasonable fee," which is "the product of a reasonable hourly rate and the sufficiently documented hours reasonably spent working on the litigation." *Truong v. New York*

*Hotel and Motel Trades Council*, No. 09 Civ. 11383, 2011 WL 147689, at *2 (S.D.N.Y. Jan. 12, 2011) (internal quotation marks omitted) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)). The court should consider what a reasonable, paying client would be willing to pay to pursue the issue taking into consideration, among other factors, the skill of the lawyers, the complexity of the issues involved, the timing demands of the case, and the availability and expertise of alternative counsel. *See Arbor Hill*, 522 F.3d at 184. A district court may "make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *Green v. City of New York*, 403 Fed. Appx. 626, 2010 WL 5174937, at *4 (2d Cir. Dec. 22, 2010); *see also Szczepanek v. Dabek*, 2011 WL 846193 (E.D.N.Y. Mar. 07, 2011) (reducing the claimed attorneys' fees by "seventy percent (70%), i.e., a forty percent (40%) reduction based upon the excessive hours and a thirty percent (30%) reduction based upon the inflated hourly rates charged"). The fee applicant bears the burden to submit evidence to support the number of hours expended as well as the number of lawyers needed to pursue the issue and the hourly rates claimed. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A district court has the authority to order that sanctions be paid before or after trial. *See, e.g.*, *Jung v. Neschis*, No. 01 Civ. 6993, 2009 WL 762835, at *24 (S.D.N.Y. Mar. 23, 2009).

Counsel for CSN alleges that it accrued $1,063,940.63 in fees and costs for its investigative work, factual development, motion practice and attendance at the hearing to over a three month period.[5] While I agree that a reasonable, paying client would pay for a motion seeking case dispositive sanctions (albeit here that result, i.e. dismissal, was to say the least problematical) , in some instances the number of hours and attorneys staffed in this case was excessive, especially given that the investigation concerned a motion for sanctions on an issue that itself was not central to the merits of the dispute. Accordingly, the total fee shall be reduced by 40%, with 75% of the balance due within 10 days of the date of this order, and the remaining balance due within 10 days of a final judgment in this case. In other words, Rezende is ordered to pay $638,364.38 to counsel for CSN for reasonable fees and costs, $478,773.28 due within 10

---

[5] CSN provided the Court with detailed time sheets, redacted to protect attorney-client privileged information and attorney work-product information. See 04/08/2011 Decl. of Kevin Reed, Partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Reed Decl."). Of the $1,063,940.63 in purported fees and costs, Quinn Emanuel Urquhart & Sullivan, LLP alleges $879,456.74, Nobel & Hug Rechtsanwalte alleges $145,478.90, Froriep Renggli alleges $17,475.91, and ICTS Protiviti alleges $21,529.08. Reed Decl. ¶ 3.

days of the date of this order and $159,591.10 due within 10 days of a final judgment in this case.[6]  Failure to comply with this order may result in preclusion or dismissal.

Rezende also objects to the recommendation in the R & R that the jury be given an instruction that Rezende lied in court.  Rezende argues that this instruction is unnecessary because CSN will have the opportunity to impeach Rezende's credibility at trial and the instruction is unduly prejudicial because the jury will assume that Rezende's lie was central to the case.  CSN also objects and argues that the recommended jury charge does not adequately address Rezende's misconduct.  This Court need not issue a ruling on the jury charge at this time.  Both parties will have an opportunity to present proposed jury instructions before trial, and this Court will address the issue at that time.

Finally, I have reviewed the remainder of Magistrate Judge Freeman's R & R and find no clear error.

## IV. Additional Issues

### A. Bifurcation of Assault and Battery Claims

In a status conference that took place on March 16, 2011, this Court noted that it would not likely try Rezende's assault and battery claims along with the claims regarding the parties' respective claims concerning ownership of IIF.  Rezende objects to this bifurcation on the grounds that separate trials would hinder the prompt administration of justice, delay the ultimate resolution of the case, inconvenience the court and the parties, and cause prejudice to Rezende.

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or thirdparty claims."  Fed. R. Civ. P. 42(b); *see also Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990).  In determining whether bifurcation is appropriate, courts consider various factors including:

> (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

---

[6] This reduction applies equally to all counsel, i.e., Rezende will pay $527,674.04 to Quinn Emanuel Urquhart & Sullivan, LLP, $87, 287.34 to Nobel & Hug Rechtsanwalte, $10,485.55 to Froriep Renggli, and $12,917.45 to ICTS Protiviti, and Rezende must pay at least 75% of such fees within 5 days of this order and the balance within 10 days of a final judgment in this case.

*See Guidi v. Intercontinental Hotels Corp.*, No. 95-9006, 2003 WL 1846864, at * 1 (S.D.N.Y. April 8, 2003) (internal citation omitted).  As discussed below, on balance these factors favor bifurcation in this case.

The underlying legal issues and facts relevant to the claims of ownership over IIF are distinct from those relevant to the assault and battery issues.  Hence, the documentary and testimonial evidence on the issues do not overlap.  Although witnesses, e.g, Rezende, may have to testify twice, the issues are sufficiently different such that witness testimony will not be duplicative.

Additionally, trying the issues together would likely prejudice both parties.  The evidence relevant to the assault and battery claims includes threats, vulgar name calling and a physical altercation among Rezende and CSN's CEO, which raise evidentiary problems under Rules 403 and 404 of the Federal Rules of Evidence on both sides.  CSN would be further prejudiced because CSN's attorneys were present for a portion of events underlying Rezende's assault and battery claims and may be called as witnesses.  *See, e.g.*, *Ramchair v. Conway*, 671 F. Supp. 2d 371, 379 (E.D.N.Y. 2009) ("[i]f a lawyer is both counsel and witness on a significant issue, the lawyer becomes more easily impeachable for interest and thus may be a less effective witness") (internal quotation marks omitted)).

Rezende argues that bifurcation would cause unwarranted expenses to the parties who would have to travel twice for trial.  This issue is easily resolved by holding the trial on the assault and battery claims directly following the completion of trial on the claims over ownership of IIF.  Further, the assault and battery trial will, in my view, take less than a day to try.

Although the parties may seek to take additional depositions to prepare for the assault and battery claims, the parties had ample time to take depositions prior to the closing of discovery, which occurred before I expressed intent to try these issues separately.  I am unlikely to reopen discovery on this issue.

B. The Plaintiff at Trial

The proper party to proceed as plaintiff at trial is CSN.  Although Rezende is listed as the plaintiff in the caption because he filed the initial complaint against Citigroup, all of those claims have been dismissed.  The remaining claims were filed by CSN, and therefore CSN will proceed first with its case in chief.

## V. **Conclusion**

I adopt the findings and recommendations of the R & R, except that with respect to the sanctions motion, Rezende is ordered to pay $638,364.38 to counsel for CSN for reasonable fees and costs, $478,773.28 due within 10 days of the date of this order and $159,591.10 due within 10 days of a final judgment in this case. I also refrain from issuing a decision on the appropriate language to include in the jury charge at this time, but will consider the issue when the parties submit their proposed jury instructions before trial and at the charging conference. CSN's motion for summary judgment is DENIED, and Rezende's motion for sanctions is DENIED. The assault and battery case will be tried separately, directly following the main trial. In the main trial, CSN will proceed first with its case in chief. The Clerk of the Court is instructed to close the relevant motions (Dkt. 95, 111, 130, and 160).

**SO ORDERED.**

April 2\ 2011

Hon. Harold Baer, Jr.,
**U.S.D.J.**

12